UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 09-204-JBC

LAKITTA GRIFFITH, PLAINTIFF,

V. MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgement. R. 6, 7. The court will deny the plaintiff's motion and will grant the defendant's motion.

I. **Overview of the Process**

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo,* resolve

1

conflicts in evidence, or decide questions of credibility; rather, it must examine the record as a whole to determine whether the decision is supported by substantial evidence. *Id.* The decision of the ALJ must stand if the evidence could reasonably support the decision, even if the evidence could also support another conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ conducts a five-step analysis when determining disability. At Step 1, the ALJ considers the claimant's work history to determine whether the claimant is performing substantial gainful activity. At Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe." At Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments. At Step 4, the ALJ determines whether the claimant can perform past relevant work. Finally, after establishing that the claimant cannot perform past relevant work, at Step 5 – the step in which the burden of proof shifts to the Commissioner – the ALJ determines whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 404.1520.

II.     **The ALJ's Determination**

At the time of the ALJ's decision, the plaintiff, Lakitta Griffith, was a forty-three-year-old female. Griffith alleges that her disability began on August 21, 2005, as a result of several physical and mental impairments. Her claim was

initially denied on May 8, 2006, and again upon reconsideration on August 28, 2006. Following a video hearing on July 24, 2008, Administrative Law Judge ("ALJ") Gregory O. Varo determined that Griffith was not disabled. AR 25.

At Step 1, the ALJ found that Griffith met the insured status requirements of the Social Security Act through December 31, 2010, and that she had not engaged in substantial gainful activity since the date of the alleged onset of her disability on August 21, 2005. AR 16. At Step 2, the ALJ found that Griffith suffered from degenerative disc disease (lumbar and cervical spine with chronic back and neck pain), chronic right shoulder pain, spastic colitis, and anxiety disorder. He also found that these impairments were "severe" because they significantly limited the claimant's physical or mental ability to perform basic work activities. *Id.* At Step 3, the ALJ found that Griffith did not have an impairment or combination of impairments that met or was the medical equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P. *Id.* at 17. At Step 4, the ALJ found that Griffith could not perform any past relevant work. *Id.* at 23. At step 5, the ALJ determined that Griffith retained the residual functional capacity ("RFC") to perform light-level work with certain limitations, and based on this testimony; Griffith's age, education, and work experience; and her RFC, he accepted the testimony of the Vocational Expert ("VE") that jobs existed in the national economy that Griffith could perform, such as bench assembly, cashier, and ticket taker/attendant. *Id.* at

24.[1]

## III. Analysis

Griffith alleges that the ALJ failed to give the opinion of her treating physician appropriate deference and that he did not consider the cumulative effect of her physical and emotional problems.

### A. Consideration of the Treating Physician's Opinion

The ALJ explained that he could not give significant weight to the RFC evaluations prepared by Dr. George Caudill because they were not credible in light of the medical record as a whole. AR 22. Dr. Caudill, Griffith's family physician, had been treating her since 1999. AR 346, 470. "A treating physician's opinion is entitled to controlling weight only if it is based on objective medical findings and is not inconsistent with other substantial evidence in the record as a whole." *Workman v. Comm'r of Soc. Security*, 105 Fed. Appx. 794, 799 (6th Cir. 2004) (citations omitted).

---

[1] Griffth alleges that her impairments prevent her from holding a job over a significant period of time. She notes that in *Gatliff v. Comm'r of Soc. Sec.*, the court held that "substantial gainful activity means more than merely the ability to find a job and physically perform it; it also requires the ability to hold the job for a significant period of time." 172 F.3d 690, 694 (9th Cir. 1994). The plaintiff in *Gatliff* suffered from "severe mental impairments," and the Commissioner of the Social Security Administration had conceded that he could not maintain a single job for more than approximately two months. Here, Griffith does not articulate any support for her assertion that her impairments are similarly severe enough to prevent her from maintaining employment over a period of time. In addition, Griffth's allegation that the ALJ failed to consider her pain and her extertional requirements is unsupported in the record. AR 21-23.

The ALJ's decision not to give significant weight to the RFC evaluations of Dr. Caudill was not erroneous. The ALJ noted that the evaluations portrayed an individual "who from both a mental and physical standpoint would be completely incapable of performing even the most basic of self-care tasks." AR 22. This portrayal starkly contrasted with Griffith's appearance at the hearings and other medical records. *Id.*

The ALJ also noted that the Dr. Caudill's assessments were inconsistent with his own treating notes. Griffith alleges that her disability is related to a motor vehicle accident that occurred on August 21, 2005. AR 17. Ten days after the accident, she visited Dr. Caudill. He recommended that she do shoulder and back exercises and walk or sway daily. AR 347. Beginning in March 2007, he began advising her to walk or sway daily for a minimum of 2-4 miles[2]. AR 403, 405, 409, 417, 421, 423, 427, 429, 431. In April 2006 and February 2008, he indicated that Griffith had been active and "walk[ed] some each day," and in April 2007 he suggested that she walk for thirty minutes after each meal, in addition to walking and swaying for two to four miles each day. AR 335, 406, 427. Dr. Caudill's belief that Griffith could engage in this activity undermines the debilitating limitations he reported. In addition, his treatment notes reflect that Griffith often reported that she had no abdominal pain, vomiting, or diarrhea, which supports the

---

[2]In some instances, he recommended that Griffith use a walker or cane if needed. AR 417. On other occasions, he recommended that she walk on a daily basis.

5

ALJ's finding that she did not meet or equal any digestive listing. AR 19, 329, 331, 337, 339, 342, 398, 400, 402, 404, 406, 414, 416, 418, 420, 426, 432, 436, 439, 442.

Similarly, the limitations he described regarding Griffith's psychological impairments appear far more severe than those evidenced in his treating notes. AR 389-95. Specifically, his treatment notes show that Griffith rarely complained of mental health problems. AR 337, 338, 342, 442, 445. She received only conservative treatment for her mental impairments, consisting of psychotropic medication, and was not treated by a mental health specialist. AR 327-366; 382-451.

Dr. Caudill's findings were also inconsistent with other medical opinions of record. AR 22. Consultative examiner Dr. Rita Ratliff examined Griffith in October 2007. She observed that Griffith "had no apparent difficulty moving about the examination room and getting on and off the examination table"; had a normal range of motion in her cervical spine and a decreased range of motion in her hips due to obesity; and that although Griffith's grip strength was not reproducible, she had no trouble using her hands for fine and gross manipulation. AR 369-70. Dr. Ratliff found that with respect to Griffith's back pain, there was no evidence of a neuropathy, but noted there were some mild arthritic changes on the x-ray. In terms of neck pain, Dr. Ratliff noted that Griffith's cervical spine examination was normal, and that although she had some mild spurs, there was "no other evidence

that [Griffith's] neck pain would interfere with performing usual occupational activities." AR 370. Dr. Ratliff noted that Griffith complained of diarrhea, and that antacids might help. *Id.* Based on her examination, Dr. Ratliff concluded that there was no evidence for any significant restriction for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling. *Id.* She also concluded that Griffith had normal gross manipulation and could carry on normal conversational speech without difficulty. *Id.* Dr. Ratliff's findings constitute substantial evidence in support of the ALJ's opinion. *See* 20 C.F.R. § 404.1527(d); *see also Richardson v. Perales*, 402 U.S. 389, 402 (1971).

The findings of two state agency medical consultants further supports the ALJ's finding of no disability, as well as his discounting of Dr. Caudill's opinion. State agency consultants are considered experts in disability evaluation whose opinions must be expressly considered by the ALJ, and their opinions may provide substantial evidence to support a finding of no disability. *See* C.F.R. § 404.1527(f)(2); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 839 (6th Cir. 2006). Here, in the RFC evaluation completed in March 2006, the state consultant noted that Griffith's alleged work restrictions "were partially credible due to her conditions, but not to the extent she alleges." AR 284. Rather, the consultative examiner found that Griffith had no visual, communicative or environmental limitations; that aside from a limited ability to reach overhead, she had no manipulative limitations; that she could occasionally stoop and crouch; and in terms

of exertional limitations, that she could sit and stand for about 6 hours in an 8-hour work day, that her ability to push/pull was not limited, and that she could occasionally lift twenty pounds and could frequently lift ten pounds. AR 250. The RFC evaluation conducted in August 2006 echoed these findings, although the consultant found that Griffith should avoid concentrated exposure to vibrations and hazards (machinery, heights, etc.). AR 321. In addition, with respect to her psychological impairments, a psychologist consultant diagnosed Griffith with slight to moderate psychological limitations (AR 462), and two state agency psychological consultants reviewing Griffith's medical records concluded that Griffith had only mild limitations (AR 287, 297).

Finally, Griffith's conservative treatment regimen is substantial evidence supporting both the weight given to Dr. Caudill's opinion and the ALJ's finding of no disability. *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (failing to seek treatment and use of mild medication undercuts claims of disabling pain). Despite her complaints of disabling pain and psychological issues, it does not appear that Griffith pursued physical therapy per the recommendation of the Spine and Brain Neurological Center, and she ceased chiropractic treatment after six months. AR 157-58, 367, 451. Griffith never sought mental health treatment, nor was she hospitalized for any mental health reasons. AR 460.

    **B.**  **Consideration of the Combination of Griffith's Impairments**

Griffith alleges that the ALJ failed to consider all of her impairments and their cumulative effects. R. 6, Attach. 2 at 5. "In reaching a determination as to disability, the ALJ is to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled." *Walker v. Sec'y of Health and Human Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992) (citing C.F.R. § 404.1523). The ALJ stated, however, that Griffith did not "have an impairment or *combination*" of impairments that met or was the medical equivalent of the listed impairments. AR 17 (emphasis added); *see also* AR 21. "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effects of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). Moreover, the ALJ's question to the vocational expert indicates that he considered the cumulative effect of Griffith's impairments. *See Durham v. Astrue*, No. 09-202, 2010 U.S. Dist. LEXIS 15382, at *11 (E.D. Ky. Feb. 22, 2010). Specifically, the hypothetical he posed to the vocational expert took into account her muskoskeletal, gastrointestinal, and psychological impairments. AR 496-97.

III. **Conclusion**

Accordingly,

**IT IS ORDERED** that the motion for summary judgment by the plaintiff is

**DENIED.**

**IT IS ORDERED** that the motion for summary judgment by the Social Security Administration is **GRANTED.**

Signed on  May 19, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY